UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ORLANDO WILLIAMS,

Plaintiff,

-against-

POLICE OFFICER BRIAN HILLMANN, POLICE
OFFICER JOSE HIGA, POLICE OFFICER JAMES
MCCULLOUGH,      SERGEANT      ANTHONY
FAMIGHETTI,

Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS HILLMANN,
HIGA, MCCULLOUGH, AND
FAMIGHETTI'S PRETRIAL
SUBMISSIONS
CONCERNING MATTERS
TO BE RESOLVED *IN
LIMINE***

10 Civ. 5091 (ENV)(VVP)

Defendant Officers Brian Hillmann, Jose Higa, James McCullough, and Anthony Famighetti, by their attorney, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, respectfully submit that the following matters should be resolved *in limine* prior to trial.

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Orlando Williams brings this action against defendant Officers Hillmann, Higa, McCullough and Famighetti[1] pursuant to 42 U.S.C. § 1983 alleging that he was unlawfully stopped and searched, falsely arrested, and subjected to excessive force in violation of his constitutional rights. Plaintiff further alleges that all of the defendant Officers failed to intervene to prevent the aforementioned violations of plaintiff's constitutional rights. (See Joint Pretrial Order ("JPTO"), annexed to July 20, 2012 letter to Court as Exhibit A[2])   Accordingly,

---

[1] As reflected in the Joint Pretrial Order, which was So Ordered by the Court on March 8, 2012, the City of New York is no longer a defendant in this case.

[2] Due to privacy concerns regarding some information contained in the documents that defendants' refer to in their Motions in Limine,  the exhibits referred to in defendants' Motions in Limine will be provided to the Court and plaintiff's counsel under separate cover, by letter dated July 20, 2012.

defendants respectfully submit this memorandum of law in support of their various motions *in limine*, addressed below.

## ARGUMENT

### POINT I

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE THAT THE CITY OF NEW YORK WAS ONCE A DEFENDANT IN THIS LITIGATION; THE CITY SHOULD BE REMOVED FROM THE CAPTION; AND PLAINTIFF'S COUNSEL SHOULD NOT REFER TO DEFENDANTS' COUNSEL AS THE CITY OR ATTORNEYS FOR THE CITY**

Plaintiff should be precluded from mentioning that the City of New York ("City") was once a defendant in this matter. According to the JPTO, plaintiff withdrew all federal and state law claims against defendant City of New York, and specifically indicated that "Monell and any other claims against the City of New York" will *not* be tried. (See Ex. A) On March 8, 2012, the Court So Ordered the JPTO. (See id.) As such, the City of New York should be removed from the caption in this case and all claims against defendant City should be dismissed. Accordingly, any reference by plaintiff to the fact that the City was once a defendant in this matter would be both prejudicial and an attempt by plaintiff to relitigate his claims against the City. The fact that the City was once a defendant in this matter has absolutely no probative value in determining whether plaintiff's constitutional rights were violated by the defendant Officers, nor would it be helpful to the jury in assessing these individuals' credibility as witnesses.

To the contrary, mentioning that the City was once a defendant in this action would serve no purpose other than to potentially confuse the jury. Further, allowing plaintiff to offer any evidence that the City was once a defendant would not only lead to jury speculation as

to why the City is no longer a defendant, but would likely further lead to jury speculation as to why Officers Hillmann, Higa, McCullough and Famighetti are still defendants.  Any such evidence therefore risks an impermissible and incorrect inference that there is some culpability on the part of the defendant Officers because they still remain as parties where the City was already dismissed.

Defense counsel also respectfully request that the Court and plaintiff not refer to defense counsel as Attorneys for the City of New York or anything to that effect in the presence of the jury, but rather refer to defense counsel only as "counsel for defendant."  Similarly, plaintiff should also be precluded from mentioning the City's potential indemnification of the individual defendant under New York General Municipal Law.  See Williams v. McCarthy, No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at **23-25 (S.D.N.Y. Oct. 25, 2007).

Accordingly, defendants respectfully submit that plaintiff should be precluded from presenting any evidence at trial of the City's status as a former defendant in this case, and further respectfully request that the City be removed from the caption.

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF DEFENDANT OFFICERS HILLMANN, HIGA, MCCULLOUGH, OR FAMIGHETTI'S DISCIPLINARY HISTORY.

According to the JPTO, plaintiff seeks to introduce into evidence as exhibits: (1) eight prior CCRB investigations involving the defendant officers; (2) the CCRB history of defendant Officers Hillmann, Famighetti, and McCullough; (3) the IAB resumes of defendant Officers McCullough, Hillmann, and Famighetti; and (4) the CPI indexes of defendant Officers McCullough, Hillmann and Famighetti. (See Exh. A at Plaintiff's Exhibit Nos. (herein after

"Pl.'s Ex. Nos.") 28-42 & 44-47)    Pursuant to Rules 402, 403, 404(b), 608, 611, 802, and 901, plaintiff, however, should be precluded from questioning or offering any evidence of: (1) CCRB investigations involving any of the defendant Officers; and (2) defendant Officers Hillmann, Higa, McCullough or Famighetti's disciplinary history, including their CCRB history, IAB resumes, or CPI indexes.    Allowing plaintiff to inquire about any disciplinary history of complaints and/or civil rights actions which have been filed against the defendants is in direct conflict with Federal Rule of Evidence 402(b).  Moreover, any evidence of any prior disciplinary history is irrelevant, prejudicial, confusing, a waste of time, would likely be used to show an alleged propensity of the defendant Officers, has little probative value, and will further result in harassment and embarrassment to them.

### A.  "Not Yet Produced" Disciplinary History

As an initial matter, as noted in Plaintiff's Exhibit Numbers 44–47 in the JPTO, plaintiff seeks to introduce into evidence the "not yet produced" IAB resumes and CPI indexes of defendant Officers Hillmann and Famighetti.  (See Ex. A at Pl.'s Ex. Nos. 44-47) In response, defendants objected on the JPTO to these exhibits pursuant to FRE 402, 403, 802, and 901, and further objected on the grounds that there was no relevant information included in those officers' IAB resumes and CPI indexes, and therefore will not produce this information.   Plaintiff's backdoor attempt to obtain this information outside of the discovery period is inappropriate and belated.  To the extent plaintiff had a good faith basis to discover the IAB resumes and CPI indexes of defendant Officers Hillmann and Famighetti during the discovery period, plaintiff had a remedy which should have been utilized during the discovery period, which ended on November 30, 2011.  Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery" only after the movant has conferred, or

attempted to confer, in good faith with the person or party failing to make the disclosure or discovery. Plaintiff's belated attempt to now discover the IAB resumes and CPI indexes of defendant Officers Hillmann and Famighetti, well after the discovery period, and thereafter introduce these documents into evidence at trial is entirely inappropriate and not made in good faith. For these reasons, plaintiff should be precluded from introducing these documents into evidence at trial.

### B. Produced Disciplinary History And Other Lawsuits

Plaintiff also seeks to introduce, as exhibits, approximately 80 pages of documents which include portions of eight separate CCRB investigation files (none of which involve the incident at issue in this case) involving the defendant officers, and the CCRB histories of defendant Officers Hillmann and Famighetti, and the defendant Officer McCullough's IAB resume and CPI index.[3] (See Ex. A at Pl.'s Ex. Nos. 28-35 & 38-42) Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b). Past bad act evidence, however, is not automatically admissible simply because the proponent has articulated some not-for-character purpose to which the evidence could be put; Rule 403 also comes into play. As the Supreme Court held in Huddleston v. United States, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) also depends upon "whether the danger of unfair

---

[3] As reflected in the JPTO, plaintiff does not seek to introduce any evidence regarding defendant Officer Higa's CCRB history, IAB resume or CPI index, and therefore, this is not addressed in defendants' Motion in Limine. To the extent plaintiff plans to question Officer Higa regarding his disciplinary history at trial, defendants, however, move in limine to preclude plaintiff from presenting any evidence of Officer Higa's disciplinary history on the same grounds discussed in Point II of this motion.

prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403."

Thus, Rule 404(b) "requires a two-part analysis: first, whether the proposed evidence fits within one of the 'exceptions' provided by the Rule, and second, even if it does, whether under Rule 403, the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice." Shaw v. City of New York, No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *16-19 (S.D.N.Y. Apr. 15, 1997); see e.g., Advisory Committee Notes to Fed. R. Evid. 404(b); Lombardo v. Stone, No. 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *10-12, 15-16 (S.D.N.Y. Jan. 29, 2002); United States v. Benedetto, 571 F.2d 1246, 1248 (2d Cir. 1978); United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986); United States v. Margiotta, 662 F.2d 131, 142 (2d Cir. 1981); Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991); Wright & Graham, Federal Practice & Procedure: Evidence § 5240 at 472 ("even if the evidence falls within one of the traditional exceptions [in Rule 404(b)], the trial judge may still exclude it on the discretionary grounds listed in Rule 403").

In this case, the introduction of the eight CCRB investigation files, the defendant Officers' disciplinary history, and inquiry into any other civil rights actions against the defendant officers do not fall under any of the 404(b) exceptions because plaintiff has no claim for municipal liability. Second, the potential for confusion or prejudice substantially outweighs any probative value. Applying these factors, plaintiff should be precluded from questioning the individual defendants regarding their disciplinary histories and/or other civil rights claims which have been filed against them.

Moreover, with respect to the eight CCRB investigation files that plaintiff seeks to introduce into evidence, none of the eight investigations involve the incident at issue. In

addition, none of these eight CCRB investigations led to any substantiated claims against defendant Officers Hillmann, Higa, or Famighetti.[4]  With respect to the CCRB histories of defendant Officers Hillmann, Famighetti, and McCullough (with the exception of what is noted in FN 4), and defendant Officer McCullough's IAB resume and CPI index, these documents do not include *any* substantiated disciplinary charges, and therefore should be precluded.  Therefore, any introduction into evidence of this information or these documents should be excluded from evidence at trial as the probative value is substantially outweighed by its potential for unfair prejudice.  See <u>Jean-Laurent v. Hennessy</u>, 2011 U.S. Dist. LEXIS 122767, *63-64 (E.D.N.Y. Oct. 24, 2011) (holding that "the probative-prejudice balancing test weighs *heavily* in favor of excluding [] evidence" of CCRB complaints that were not substantiated) (emphasis added). Applying these factors, plaintiff should be precluded from questioning defendant Officers Hillmann, Higa, McCullough, or Famighetti regarding their disciplinary history.

Moreover, with respect to false arrest claims brought under the Fourth Amendment in §1983 cases, the Second Circuit has uniformly held that evidence of an officer's past bad acts are only admissible under Rule 404(b) if the alleged past bad act has a close nexus with the acts complained of by plaintiff in his complaint.  <u>Berkovich</u>, 922 F.2d at 1022.  In <u>Berkovich</u>, plaintiff sought to introduce a police officer's past CCRB complaints to prove a "pattern of conduct" on the part of the officer with respect to, among other things, plaintiff's false arrest claims.  <u>Id</u>.  In upholding the trial court's exclusion of the CCRB complaints, the Second Circuit held that "[t]o merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'"  <u>Id</u>. at 1022-

---

[4] Out of the eight CCRB investigation files that were disclosed to plaintiff's counsel during the discovery period, one investigation included a single substantiated charge against defendant Officer McCullough for improper use of a baton.  This charge has no relevance to the present case, as there are no allegations in the present case that a baton was used during the incident in question, and therefore plaintiff should be precluded from offering this into evidence at trial.

23(quoting <u>Benedetto</u>, 571 F.2d at 1249); <u>see also</u> <u>Wallace v. Hano</u>, No. 90 Civ. 2064 (WK), 1992 U.S. Dist. LEXIS 13388, at *19-21 (S.D.N.Y. Sep. 3, 1992)(prior bad acts claimed to be a "pattern of conduct" must be distinctive enough to form a signature).  The record is devoid of any such "unique scheme."  Accordingly, plaintiff should be precluded from questioning defendant Officers Hillmann, Higa, McCullough or Famighetti regarding their disciplinary history.

### C. Prior Arrest of Defendant Officer Famighetti

Plaintiff should be precluded from mentioning the fact that defendant Sergeant Anthony Famighetti has been arrested.   Sergeant Famighetti testified during his January 11, 2012 deposition that, he has been arrested on one occasion, when he was a teenager, approximately 20 years ago.  (<u>See</u> Excerpt from Sgt. Famighetti's 1/11/12 Deposition at Tr: 131, annexed to July 20, 2012 letter to Court as <u>Ex. B</u>)  Sergeant Famighetti further testified that, as a result of this arrest, he plead to two counts of disorderly conduct and leaving the scene of an accident.  (<u>See</u> <u>Ex. B</u> at Tr: 125:10-14 )

Rule 609(a)(1) of the Federal Rules of Evidence provides that evidence of a conviction shall be admissible if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted.  <u>See</u> Fed. R. Evid. 609(a)(1). Furthermore, Rule 609(b) invokes a time limit for the admissibility, in that "evidence of a conviction... is not admissible if a period of *more than* ten years has elapsed since the date of the convictions... unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect." (emphasis added)  Here, Sergeant Famighetti was not convicted of a crime punishable by death or imprisonment in excess of one year, and it appears that his arrest took place over 20 years ago.  The prejudicial effect of

allowing plaintiff to present evidence of Sergeant Famighetti's teenage arrest and guilty plea, which took place approximately 20 years ago, substantially outweighs its probative value. Defendants would be severely prejudiced should plaintiff be able to present evidence regarding Sergeant Famighetti's arrest. As such, defendant Famighetti's arrest does not satisfy the admissibility requirements for Rule 609, and therefore should be precluded.

**POINT III**

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE DOCUMENTS WHICH WERE NOT PROVIDED DURING THE DISCOVERY PERIOD**

**A. Plaintiff Should be Precluded From Offering Into Evidence Documents That Were Never Produced**

Plaintiff seeks to offer into evidence the following documents as exhibits: (1) documents related to Sgt. Famighetti's Criminal Conviction; (2) CCRB File for complaint in which Sgt. Famighetti's (sic) is accused of excessive force involving baton; (3) SNEU Roster; (4) IAB resumes for Officers Hillmann and Famighetti; and (5) CPI indexes for Officers Hillmann and Famighetti. (See Ex. A at Pl.'s Ex. Nos. 36-37, 43-47) These documents should be precluded under Rule 402, 403, 802, 901, FCRP 26, 33, 34, and 37.

First, with respect to documents relating to Sergeant Famighetti's arrest as a teenager, defendants respectfully assent that, for the reasons set forth in Point II herein, plaintiff should be precluded from offering into evidence any documents related to that arrest and/or plea. Second, these documents contain inadmissible hearsay statements under Rule 802. Additionally, plaintiff failed to comply with Rule 26 of the Federal Rules of Civil Procedure. Pursuant to Rule 26, "a party must... provide to the other parties... a copy... of all documents... that the disclosing party has in its possession, custody, or control and may use to support its claims or

defenses." See Fed.R.Civ.P. 26 (a)(1)(A)(ii).  Moreover, pursuant to Rule 37, "if a party fails to provide information… as required by Rule 26(a)… the party is not allowed to use that information… on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." See Fed.R.Civ.P. 37(c)(1) (emphasis added).  In the present case, plaintiff failed to comply with Fed. R. Civ. P. 26(a) in that he failed to identify or produce any of these documents as documents he may use to support his claim at trial.  These documents have never been provided to defendants, and as stated more thoroughly in Point IIA, *supra*, to the extent plaintiff seeks to now obtain this information from defendants, plaintiff should have done so during the discovery period.

Due to the failure of disclosing this information, defendants were not put on any notice of plaintiff's intention to use this information until identifying these documents in his portion of the JPTO.  Furthermore, defense counsel has not seen a copy of any of these documents and is therefore prejudiced.  Plaintiff should therefore be precluded from introducing these documents and from making any reference to these documents at trial.

Accordingly, documents referenced in Plaintiff's Exhibit Numbers 36-37 & 43-47 should be precluded under Rules 402, 403, 802, 901, Fed.R.Civ.P. 26, 33, 34, and 37.

**B. Plaintiff Should be Precluded From Offering Into Evidence Documents That Were Not Produced in The Discovery Period**

Plaintiff seeks to offer into evidence approximately 91 separate "photographs of scene" and a "map of location," which were both produced on a CD at the February 29, 2012 pretrial conference, the date which the parties filed their JPTO.[5]  (See Ex. A at Pl.'s Ex. Nos. 49-50)  These documents should be precluded under Rule 402, 403, 901, FCRP 26, 33, 34, and 37.

---

[5] The parties submitted the JPTO to Magistrate Judge Pohorelsky at the February 29, 2012 court conference, therefore, defendants were unable to submit objections to these proposed exhibits by the time of filing because they had not received copies of these exhibits in advance of the conference.

As an initial matter, plaintiff failed to comply with Rule 26 of the Federal Rules of Civil Procedure. Pursuant to Rule 26, "a party must... provide to the other parties... a copy... of all documents... that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." See Fed.R.Civ.P. 26 (a)(1)(A)(ii). Moreover, pursuant to Rule 37, "if a party fails to provide information... as required by Rule 26(a)... the party is not allowed to use that information... on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." See Fed.R.Civ.P. 37(c)(1) (emphasis provided). In the present case, plaintiff failed to comply with Fed. R. Civ. P. 26(a) in that he failed to identify or produce any of the 91 photographs of the scene or a map of the location as documents he may use to support his claim at trial. Furthermore, the parties had nearly 8 months of time to complete discovery, and it was not until nearly three months *after* the close of discovery that plaintiff provided defendants with these documents. Due to the late disclosure of these documents, defendants were not given sufficient notice of plaintiff's intention to use these documents  information in advance of trial, and accordingly, plaintiff should be precluded from making any reference to the any of these documents.

In addition, the undated photographs have not been authenticated pursuant to Rule 901, and are confusing, abundantly cumulative and duplicative, and misleading to the jury. To provide the jury with 91 photographs of the scene of the incident is extremely cumulative and duplicative. Furthermore, these photographs have not been authenticated nor do they provide a date and time period of when the location were photographed, nor do they indicate the specific locations of the photographs. Thus, admitting these documents into evidence would only mislead and confuse the jury, and bombard them with cumulative information, which would be a

waste of time.  Accordingly, the documents provided in Plaintiff's Exhibits 49-50 should be precluded under Rules 402, 403, 901, Fed.R.Civ.P. 26, 33, 34, and 37.

**POINT IV**

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE AFFIDAVITS OF JOHN WILLIAMS AND BETTY BAXTER**

Defendants object to the introduction of the affidavits of John Williams and Betty Baxter under Federal Rules of Evidence 402, 403 and 802.  (See JPTO at Plaintiff's Exhibit No. 48, Docket Entry No. 37)  As an initial matter, plaintiff includes John Williams and Betty Baxter as witnesses on plaintiff's witness list.  (See Ex. A at Pl.'s Witness List, Nos. 12-14)  Pursuant to FRE Rule 403, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Because these individuals have been listed as witnesses for trial, and are, therefore, presumably available for trial, the admission of their affidavits, other than for impeachment purposes, as exhibits at trial is cumulative and duplicative of their trial testimony, and would only mislead, confuse and waste the time of the jury.[6]  Moreover, the affidavits are rank hearsay and should be precluded pursuant to FRE 802.

---

[6] In addition, John Williams and Betty Baxter both gave deposition testimony regarding this incident.  Defendants move on similar grounds to the extent plaintiff intends to use their deposition transcripts.  Defendants respectfully reserve their right to use the deposition transcripts of all witnesses for purposes of impeachment.

- 12 -

## POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE THE AFFIDAVIT OF SHERRON PEOPLES AND ALSO SHOULD BE PRECLUDED FROM CALLING SHERRON PEOPLES AS A WITNESS AT TRIAL

On February 16, 2012, the Court issued an Order granting defendants' motion to preclude Sherron Peoples from testifying at trial, *unless* she appears for a deposition no later than 21 days before any trial date that is set.  (See Court Order dated 2/16/12, annexed to July 20, 2012 letter to Court as Ex. C)  To date, Ms. Peoples has not appeared for a deposition and therefore, she should be precluded from testifying at trial, should she not appear for a deposition at least 21 days before trial.

Furthermore, whether Ms. Peoples appears for a deposition prior to trial, plaintiff should be precluded from offering Ms. Peoples' affidavit as an exhibit at trial.  As an initial matter, to the extent Ms. Peoples appears for a pre-trial deposition, as explained more thoroughly in Point IV *supra*, her affidavit should be precluded pursuant to FRE 402, 403 and 802, as it is cumulative, duplicative, a waste of time, misleading, and rank hearsay.  To the extent Ms. Peoples' does not appear for a deposition prior to trial, plaintiff should not be permitted to use her affidavit as an exhibit at trial because, despite defendants' unavailing attempts to obtain Ms. Peoples' pre-trial testimony and examine her regarding her affidavit, defendants would be prejudiced if her affidavit is admitted into evidence as they did not have an opportunity to examine her on her statement.

## POINT VI

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE MEMO BOOK ENTRIES OF DEFENDANT OFFICERS HILLMANN, HIGA, MCCULLOUGH AND FAMIGHETTI, AND NON-PARTY DETECTIVE VARGAS**

Plaintiff seeks to offer into evidence the memo book entries of defendant Officers Hillmann, Higa, McCullough and Famighetti, and non-party Detective William Vargas. Defendants now move to preclude plaintiff from offering these documents into evidence pursuant to FRE 402, 403, and 802. (See Ex. A at Pl.'s Ex. Nos. 9, 18-21 & 54)

Pursuant to FRE 403, offering the memo books into evidence is inadmissible since its probative value is outweighed by considerations of waste of time and needless presentation of cumulative evidence. Plaintiff intends to introduce the defendant officers' and non-party Detective Vargas' memo books, which includes fundamental facts such as the date, time, location, and other details of the incident.[7] These are precisely the types of questions that the defendants and Officer Vargas will be asked and will answer while on the stand in the trial of this matter. There is no value in allowing plaintiff to read into the record from the memo books because it will nearly be identical to testimony that will be elicited during the trial, either on direct or cross examination. The evidence is cumulative, and will be a waste of the time of the Court, the Jury and the parties time, is hearsay, and thus should be precluded.

---

[7] Although Detective Vargas is not a defendant in this matter, defendants intend to call Detective Vargas to the stand and question him regarding the incident occurring on July 29, 2010. Therefore, for the reasons stated above, admission of his memo book entries from the incident date would be cumulative and duplicative of his trial testimony.

## POINT VII

## PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE ANY ARREST PAPERWORK AND COURT DOCUMENTS, AND ANY RELATED TESTIMONY.

Plaintiff seeks to offer into evidence approximately 40 pages of NYPD and criminal court documents, related to plaintiff's July 29, 2010 arrest, as exhibits at trial.  (See Ex. A at Pl.'s Ex. Nos. 1-8, 10-12, 14-17 & 27)  These documents should be precluded under Rules 402, 403, 802, 805 and 901.

As an initial matter, the issues that need to be resolved in this case by trial are: (1) whether probable cause existed for plaintiff's arrest; and (2) whether plaintiff was subjected to excessive force in the course of his arrest.[8]  Therefore, the relevant time period with respect to this incident begins with *when* the officers first observed plaintiff on July 29, 2010, *up until the time* plaintiff was arrested.  What occurred *after* plaintiff's arrest is entirely irrelevant to the causes of action as alleged by plaintiff and the issues that must be decided by a jury in this case.

### A. Plaintiff Should be Precluded From Offering Into Evidence Any Arrest Paperwork

Plaintiff seeks to offer into evidence: (i) a copy of the NYPD complaint report; (ii) three copies of plaintiff's arrest report from the date of incident; (iii) the "scratch" copy of both the complaint report and the arrest report; (iv) 15 pages of the 79th Precinct's roll call for July 29, 2010; (v) the online prisoner arraignment form ("OLPA") for plaintiff dated July 29, 2010; (vi) the desk appearance ticket investigation form; and (vii) a copy of plaintiff's entry in

---

[8] As noted in defendants' proposed jury charges, it is defendants' position that the only two claims to be tried in this case are plaintiff's false arrest and excessive force claims.  Plaintiff's claims for unlawful stop and search and failure to intervene, which plaintiff sets forth in the JPTO, were not plead in plaintiff's Second Amended Complaint, filed August 5, 2011.

the 79th Precinct's Command Log from the incident date.  (See Ex. A at Pl.'s Ex. Nos. 1-3, 5-8, 11-12 & 27)

 Similar to defendants' arguments regarding precluding plaintiff from offering officer memo books into evidence, offering the above-listed arrest paperwork into evidence is inadmissible since its probative value is outweighed by considerations of waste of time and needless presentation of cumulative evidence.  Plaintiff's intention to introduce this overbroad and unnecessary group of documents, which include basic facts as to what plaintiff was arrested for and the circumstance of plaintiff's arrest is *precisely* the information that will be elicited from the defendant officers while on the stand at trial in this matter.  There is no reason for plaintiff to offer into evidence nearly 35 pages of documents, which includes the same information that will come out in trial testimony by the defendant and non-party officers.

 In addition, the numerous copies of plaintiff's arrest report from the incident date, the complaint report, and the "scratch" copies of each are extremely duplicative and cumulative and should be precluded pursuant to FRE 402 and 403.  Offering these documents into evidence would be misleading to the jury and a waste of the Court's, the jury's and the parties' time, and would cause unnecessary delay.  Furthermore, these documents all contain inadmissible hearsay and should be precluded pursuant to FRE 802.

 More specifically, plaintiff seeks to offer into evidence copies of the "scratch" complaint and arrest reports. (See Ex. A at Pl.'s Ex. Nos. 3 & 6)  Defendant Officer Hillmann testified at his deposition that these documents are exactly what they are called – they are "scratch" copies and not the final documents.  (See excerpt from Officer Hillman's 11/15/11 Deposition at Tr: 236, annexed to July 20, 2012 letter to Court as Ex. D)  Sergeant Famighetti testified at his deposition that the scratch documents are "more of a worksheet that you would

use to enter into the computer." (See Ex. B at Tr:279)  The scratch copies, therefore, are not final versions of either the arrest or the complaint report- and the information contained therein is not finalized.  Plaintiff's counsel has made much of the fact that the word "assault" was written and crossed out on the scratch copy of the arrest paperwork.  This is of no moment in that plaintiff was never charged, at any point, with respect to this arrest, with assault. As such, these documents will only serve to confuse the jury and should not be admitted into evidence.

With respect to the desk appearance ticket investigation form, both Sergeant Famighetti and Officer Hillmann testified at their respective depositions that they each only completed a *portion* of this document. (See Ex. B at Tr:273:21-274:11 (Sergeant Famighetti testified that his handwriting only appears in the signature portion and no where else on the document); see also Ex. D at Tr: 222:7-223:10 (Hillmann testified that the only portion of the document that is in his handwriting is the "number on the top and then the cross-out of 'assault 2' and the 'resisting arrest.'"))

With respect to the Command Log, Sergeant Famighetti testified that his handwriting appears on the command log entry related to plaintiff's arrest, while Officer Hillmann testified that he had no part in completing that entry. (See Ex. D at Tr: 174:21-176:5; Ex. B at Tr: 279:10-23).  Again, the defendant officers will testify regarding the incident in question and to the portions of this paperwork that these officers completed.  Overwhelming the jury with approximately 20 pages of documents, which includes information that the officers will testify about is duplicative and cumulative and a waste of time.

Plaintiff also intends to introduce 15 pages of the 79th Precinct Roll Call at trial. (See Ex. A at Pl.'s Ex. No. 27)  This document has absolutely no bearing on the facts that are issue in this case.  A roll call is essentially an attendance sheet for the precinct, and to admit this

into evidence does not help the Jury in determining the issues of fact in this case because there is no dispute of fact as to which officers were present at the incident. Furthermore, the roll call includes information regarding officers who have nothing to do with the incident at issue in this case.

Finally, plaintiff seeks to include the two-page OLPA document.[9] (See Ex. A at Pl.'s Ex. No. 11)  Again, the information contained in the OLPA is inadmissible hearsay pursuant to FRE 802.  Moreover, this is a document that was not created by any of the defendant officers, nor has it been authenticated, and is therefore inadmissible pursuant to FRE 901.  The information contained in the OLPA is cumulative and duplicative of testimony that is going to be given by the parties, and therefore will be  waste of the time of the Court, the Jury, and the parties, and thus should be precluded.

**B. Plaintiff Should be Precluded From Offering Into Evidence Any Documents Related to His Criminal Prosecution**

Plaintiff seeks to offer into evidence *three separate copies* of the "Criminal Complaint", a "Complaint Room Screening Sheet", the "Certificate of Disposition", and the "Court Action Sheet", all which relate to plaintiff's criminal prosecution. (See Ex. A at Pl.'s Ex. Nos. 4, 10, 14-17)  These documents are hearsay, hearsay within hearsay, and are not authenticated.  Moreover, these documents are not relevant.

First, plaintiff does not allege a claim of malicious prosecution in this case, nor could a malicious prosecution claim survive motion practice in this case, as plaintiff accepted an Adjournment in Contemplation of Dismissal ("ACD") with respect to the charges related to his July 29, 2010 arrest. (See Ex. A at pg. 3; Murphy v. Lynn, 118 F.3d 938, 949 (2d Cir. 1997)

---

[9] Defendants note that, pursuant to the JPTO, defendants listed, as an exhibit, the photograph of plaintiff included on the first page of the OLPA, and plaintiff did not object. (See JPTO at Defendants' Exhibit B)  Therefore, the above motion is made based on the information included in the OLPA, with the exception of plaintiff's photograph.

(stating that an ACD is not favorable to the accused for purposes of a malicious prosecution claim)). Therefore, offering any documents relating to plaintiff's criminal prosecution is irrelevant, entirely misleading and would confuse the issues in this case, and would result in a waste of the jury's time; therefore, they should be precluded under Rules 402 and 403.

More specifically, the Criminal Court Action Sheet generally lists, among other things, court dates, various stamped entries, partial remarks, unidentified acronyms, bail status, and whether plea offers were made during the criminal prosecution. A Certificate of Disposition essentially lists the disposition and date when a criminal case was resolved, in addition to other information, such as pedigree information and the charges against the individual. In this case, the Certificate of Disposition provides plaintiff's personal identifying information, his arraignment charges, the date he accepted the ACD, and the subsequent date that his criminal case was sealed pursuant to the ACD. (See Ex. A at Pl.'s Ex. No. 14) The Court Action Sheet in this case is a one page document, including information regarding the Criminal Judge's name, the criminal court part, and a number of indiscernible acronyms. (See Ex. A at Pl.'s Ex. No. 15). The information contained in both the Certificate of Disposition and the Criminal Court Action Sheet have absolutely no bearing on the issues at hand in this case, as plaintiff's prosecution is not at issue in this case, and therefore, they will not prove or disprove any of the facts of consequent to this action. These documents are therefore entirely misleading, will confuse the issues in this case, and cause an undue delay and waste the time of the jury. Furthermore, their probative value is substantially outweighed by the prejudicial effect these documents may have. Therefore, admission of such documents would only result in a waste of the time of the Court, the parties, and the Jury. Additionally, the statements contained in the Criminal Court Action Sheet are inadmissible hearsay under Rule 802.

In addition, plaintiff seeks to offer into evidence the Complaint Room Screening Sheet and three separate copies of the criminal complaint, which are all entirely irrelevant to the disputed issues of fact in this case—whether there was probable cause for plaintiff's arrest and whether plaintiff was subjected to excessive force during the alleged incident. The Complaint Room Screening sheet contains inadmissible hearsay and, is a document prepared by the District Attorney's Office; it should therefore be precluded under FRE 802.

The Criminal Court Complaint includes a description of what happened prior to, and leading up to plaintiff's arrest, which was prepared by the District Attorney's Office; it is therefore hearsay under Rule 802. The defendants' live testimony during direct and cross examination need not be supplemented by an out of court statement of events previously signed by the witness and should be precluded on that basis. In addition, to the extent plaintiff intends to use his Criminal Court Complaint for the purpose of showing the criminal charges which were pursued against him relating to his July 29, 2010 arrest, defendant does not contest that information. However, providing this document to the jury is going to be cumulative of testimony, and only create confusion and mislead the jury.

Furthermore, the Criminal Complaints and the Complaint Room Screening should be precluded under FRE 402 and 403 as the information included in these documents is duplicative and cumulative, and includes information regarding when plaintiff was arrested and the arrest charges. In addition, the Complaint Room Screening Sheet includes information regarding an injury to defendant Officer McCullough, which is not at issue in the case. Finally, these documents have not been authenticated and should be precluded under FRE 901.

Accordingly, the Court Action Sheet, the Certificate of Disposition, the *three separate copies* of the Criminal Complaint, a the Complaint Room Screening Sheet, should all be precluded pursuant to FRE 402, 403, 802, 805 and 901.

## POINT VIII

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING ANY MEDICAL RECORDS AT TRIAL AND ANY RELATED TESTIMONY

**A. Plaintiff Should be Precluded From Introducing Any of His Medical Records[10]**

Pursuant to the JPTO, plaintiff intends to introduce more than 1000 pages of medical records, including records from: (1) Woodhull Hospital; (2) Preferred Health Partners; (3) Interfaith Medical Center; (4) New York Methodist Hospital; and (5) Dr. Alix Dufresnie. (See Ex. A at Pl.'s Ex. No. 13, 18, 22, 24-25) Defendants object to the introduction of any and all of plaintiff's medical records on grounds of relevance under Fed. R. Evid. 402 and 403; hearsay under Fed. R. Evid. 802 and 805; and authenticity under Fed. R. Evid. 901.

As an initial matter, plaintiff has failed to identify any expert physician or otherwise who can address issues of liability or issues of causation. And, to the extent plaintiff intends to raise this issue now, he is precluded pursuant to Rule 37(c) of the Federal Rules of Civil Procedure. Plaintiff's medical records, therefore, must be precluded as an exhibit at trial (as well as any related testimony) as irrelevant, unduly prejudicial, confusing and as inadmissible hearsay. To simply hand to the Jury more than 1000 pages of *uncertified* medical records and allow the Jury to make their own assessment as to what is contained in the records is extremely prejudicial to defendants and entirely misleading. In other words, without an expert to proffer an

---

[10] Plaintiff also intends to introduce 56 pages of plaintiff's New York State Department of Health Medicaid records. (See Ex. A. at Pl.'s Ex. No. 26) Defendants object to the introduction of these records and any related testimony on the same grounds as outlined in Point VIII.

- 21 -

opinion as to the cause of any of plaintiff's alleged injuries, or why plaintiff received medical treatment at any point prior to or after the incident, such records or related testimony is inadmissible.

Defendants also object to the introduction of plaintiff's medical records on authenticity grounds. Fed. R. Evid. 901(a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." Kamara v. United States, 2005 U.S. Dist. LEXIS 20651, at *5  (S.D.N.Y. Sept. 19, 2005) (citing United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004) (quoting United States v. Pluta, 176 F.3d 43, 49 (2d Cir. 1999)). "'Authentication is perhaps the purest example of a rule respecting relevance: evidence admitted as something can have *no* probative value unless that is what it really is.'" Ricketts v. City of Hartford, 74 F.3d 1397, 1410 (2d Cir. 1996) (quoting United States v. Skiller, 751 F.2d 477, 498-500 (2d Cir. 1984)). "The party proffering the evidence bears the burden of proving 'a rational basis for concluding that an exhibit is what it is claimed to be.'" United States v. Hon, 904 F.2d 803, 809 (2d Cir. 1990), cert. denied 111 S.Ct 789 (1991). In the instant matter, plaintiff seeks to introduce medical records from five separate sources, however, he has failed to provide defendants with a certified copy of such records. As such, defendants submit that these medical records should be precluded.

Finally, this issue of relevance is paramount with respect to plaintiff's medical records. For example, plaintiff's medical records from Preferred Health Partners cover a period beginning on December 13, 2010, which was nearly 6 months after the incident in this case,

which is alleged to have occurred on July 29, 2010.  Similarly, plaintiff's medical records from Interfaith Medical Center cover a period of time from January of 2008 through May of 2011. Moreover, *all* of plaintiff's records from New York Methodist Hospital pre-date the incident by more than 1 year.  And finally, plaintiff's medical records from Dr. Dufreznie cover a number of different dates, ranging from February of 2009 through August of 2011.  Even if the medical records cover any time period surrounding the incident, these records are irrelevant and misleading as plaintiff has failed to identify any qualified witness to testify as to the causation of any alleged injury.   The probative value of all of plaintiff's medical records is severely outweighed by the prejudicial impact that these records may have on defendants.  In sum, to offer this exorbitant amount of *uncertified* records to the Jury, without having a qualified witness testify to any potentially admissible evidence contained in the records, and merely allow the Jury to make their own assessment as to causation or diagnosis is inappropriate, and the records are inadmissible.  Furthermore, defendants also object to the introduction of these records because they are hearsay, and contain hearsay within the records.

### B. Plaintiff Should be Precluded From Introducing Any of Defendant Officer McCullough's Medical Records

Plaintiff also seeks to offer into evidence defendant Officer McCullough's medical records.  (See Ex. A at Pl.'s Ex. No. 23)  For the same reasons discussed in Point VIII B *supra*, plaintiff should also be precluded from introducing any of defendant Officer McCullough's medical records from Long Island College Hospital and any related testimony pursuant to FRE 402, 403, 802, 805, and 901.  Again, Officer McCullough's medical records have no relevance to the issues of fact and the claims that are to be tried in this case; furthermore, Officer McCullough's medical condition is not an issue in this case.

## POINT IX

## PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE THAT THE CITY OF NEW YORK MAY INDEMNIFY THE DEFENDANTS

Plaintiff should not be permitted to mention or offer any evidence that the City of New York may indemnify defendants should a jury find either of them liable. Such evidence or arguments lack any evidentiary value and seriously prejudice defendants. If the jury is permitted to assume that the City of New York will pay, the jury may not carefully assess issues of liability. This is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance. See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds") (internal citation omitted). Indemnification has no bearing on the facts of plaintiff's claims or damages. See Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997) (holding that the existence of an indemnification agreement is relevant only where individual defendants adduce evidence of their personal financial resources at trial).

Moreover, evidence of the City's potential indemnification should be precluded because it is not relevant. Edwards v. City of New York, 08 Civ. 2199, 2011 U.S. Dist. LEXIS 75300, *14-15 (E.D.N.Y. July 13, 2011) ("Indemnification is not relevant to any issue before the jury and plaintiff will not be permitted to inform the jury that defendant might be indemnified by the City."); Jean-Laurent v. Wilkinson, 05 Civ 0583(VM), 2009 U.S. Dist. LEXIS 20472, at *8 (S.D.N.Y. Mar. 13, 2009) (precluding plaintiff from mentioning City's potential indemnification of officers); Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-

- 24 -

25 (S.D.N.Y. Oct. 25, 2007) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds) (internal citations omitted); see also McGuire v. Bridgeport & Port Jefferson Steamboat Co., 00 Civ. 5951 (WK), 2001 U.S. Dist. LEXIS 19753, at *4 (S.D.N.Y. Nov. 29, 2001) (finding indemnification evidence not relevant at trial).

## POINT X

### PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR AMOUNT TO THE JURY AS PLAINTIFF'S DAMAGES

While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. Id.; see Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel …") The Court in Consorti went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations.

Accordingly, plaintiff should be precluded from suggesting a specific dollar amount to the jury during his opening statement, the testimony of any witness, and/or summation.

## POINT XI

## DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF AND EXAMINE PLAINTIFF ON HIS USE OF ALIASES, FALSE DATES OF BIRTH, AND MULTIPLE SOCIAL SECURITY NUMBERS

Defendants should be permitted to introduce evidence of and question plaintiff regarding his use of "aliases", false dates of birth, and multiple social security numbers under Rule 402 and 608(b). Plaintiff's use of this false information is relevant to plaintiff's character for truthfulness, and should be available to the jury to consider for this purpose.

Several courts in this Circuit and in this District have deemed the use of aliases and differing dates of birth to be admissible precisely for the purpose of addressing a plaintiff's credibility. See Jean-Laurent v. Wilkinson, No. 05 Civ. 0583 (VM), 2009 U.S. Dist. LEXIS 20472, at *8-9 (S.D.N.Y. Mar. 13, 2009) (permitting defendants to introduce evidence of plaintiff's two aliases at trial); see also Sedney v. Blot, No. 00 Civ. 1302 (LTS), 2003 U.S. Dist. LEXIS 21364, at *10 (S.D.N.Y. Dec. 1, 2003) (permitting defendants to examine plaintiff on his differing social security and birthplace information as probative of his character for truthfulness); Fletcher v. City of New York, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (permitting defendants to introduce evidence of plaintiff's use of 18 aliases under Fed. R. Evid. 608(b)); Young, 1995 U.S. Dist. LEXIS 4555, at *14-16 (permitting defendants to question plaintiff's use of false names and identities as probative of his truthfulness); Brundidge, 79 F. Supp. 2d at 227 (permitting defendants to examine plaintiff on his use of aliases and false social security numbers on grounds of truthfulness); Lyda v. United States, 321 F.2d 788, 793 (9th Cir. 1963) ("[i]f a man lie about his own name, might he not tell other lies?").

Here, plaintiff has used aliases, false dates of birth, and a number of different social security numbers.  For example, during the course of plaintiff's October 31, 2011

deposition, when asked if plaintiff is known by any other name other than "Orlando Williams", plaintiff responded with the name "Larry." (See Excerpt from Plaintiff's 10/31/11 Deposition at Tr: 21:6-8, annexed to July 20, 2012 letter to Court as Ex. E)  Plaintiff's New York State Criminal History ("RAP Sheet"), however, indicates that plaintiff has used up to 10 different names. (See Pl.'s RAP Sheet at Bates No. 1328, annexed to July 20, 2012 letter to Court as Ex. F)  Plaintiff's RAP sheet also indicates that he has used up to 7 different dates of birth, and three separate social security numbers.  (See Ex. F at Bates Nos. 1328-29)  Therefore, defendants submit that they should be able to inquire into plaintiff's use of aliases, false dates of birth, and numerous social security numbers, on cross-examination, as this information is directly relevant to the question of plaintiff's character for truthfulness under Rules 402 and 608(b) should therefore be available to the jury for this purpose.

## POINT XII

### DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF, AND EXAMINE PLAINTIFF ON, HIS ARREST AND CONVICTION HISTORY.

Defendants should be permitted to introduce evidence of, and question plaintiff on, his prior arrests and convictions under Rules 402, 404(b), 609(a)(1), 609(b) and 608(b) in order to refute and mitigate his claim for damages arising out of his July 29, 2010 arrest, as well as for impeachment purposes.[11]

### A.    Damages

In this action, plaintiff is claiming damages related to an alleged approximate 48 hours of detention as a result of his July 29, 2010, arrest.  In addition to seeking damages for his

---

[11] In addition, given plaintiff's lengthy criminal history, defendants reserve the right to cross-examine plaintiff on any of his other prior or subsequent arrests or convictions should he open the door to such questioning during his testimony.

loss of liberty, plaintiff alleges that, "as a direct and proximate result of his unlawful detention [and] confinement, plaintiff... continues to suffer from nightmares, [is] fearful of going outside and when he sees police, and suffer[s] various emotional attacks." (See Plaintiff's 2nd Amended Complaint, dated 8/5/11, at ¶¶ 35-38, annexed to July 20, 2012 letter to Court as Ex. G) Plaintiff claims that he suffered and continues to suffer "mental anguish" and "emotional distress" as a result of the defendants' actions, and "some or all of [those injuries] which may be permanent." "is seeking damages for the emotional distress...caused by the defendant's acts...." (See Ex. G at ¶¶ 35-38)

Plaintiff's alleged emotional damages, however, should be mitigated by the fact that, according to his RAP sheet, he has been arrested on at least 14 separate occasions, all of which arrests occured prior to the incident. (See generally Ex. F)  Plaintiff's RAP sheet reflects that, as a result of his convictions, he has been sentenced to jail time in, at a minimum, seven separate criminal cases, ranging from 5 days to 5 years and 3-6 years.  (See generally Ex. F)  In addition, according to plaintiff's RAP sheet, he has spent nearly three years in correctional custody for a prior conviction. (See Ex. F at Bates No. NYC 1333).   Plaintiff also testified at his October 31, 2011 deposition that, with respect to a 1973 arrest, he spent 18 months in correctional custody, and for another conviction in 1984, he spent 36 months in correctional custody. (See Ex. E at Tr: 47:14-22; 50:18-24)

Should the jury determine that damages are warranted in plaintiff's case, the amount of time plaintiff spent in police custody on each of his prior and subsequent arrests bears directly on the issue of any damages stemming from his time in police custody as a result of his July 29, 2010, arrest.  As the Court is aware, nominal damages are not permitted in false arrest cases.  Kerman v. City of New York, 374 F.3d 93, 124 (2d Cir. 2004).  If the jury finds liability

against defendant, it must award compensatory damages for plaintiff's loss of liberty by calculating plaintiff's actual time in custody.  Kerman, 374 F.3d at 124-26.  Accordingly, it is necessary for the jury to compare the alleged 48 hours plaintiff spent in police custody in this case to the time plaintiff spent in police custody for his prior arrests to measure damages, if any, for plaintiff's claimed loss of liberty.  Plaintiff's July 29, 2010, arrest and alleged damages must be placed in context for the jury through his other arrests, convictions, and other experiences with law enforcement, and therefore are relevant in the instant litigation under Rule 402.

Courts in both the Southern and Eastern Districts of New York have also permitted inquiry into a plaintiff's arrest history for the purposes of emotional damages.  A common rationale is that "one who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never been detained."  Wilson v. City of New York, No. 06 Civ. 229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006); see also Schiller v. City of New York, No. 04 Civ. 7922 (KMK), 2006 U.S. Dist. LEXIS 88854, at *24-25 (S.D.N.Y. Dec. 7, 2006) (same); Ellis v. City of New York, 06 Civ. 4827 (LTS), Order Resolving Motions In Limine (S.D.N.Y. June 18, 2007) (same); Banushi v. P.O. Palmer, No. 08 Civ. 2937 (KM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011) (finding plaintiff's prior arrest and incarceration history relevant to a jury's determination of emotional damages under Rule 402).  Furthermore, the probative value of arrest history evidence "is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Banushi, 2011 U.S. Dist. LEXIS 419, at *7-9 (internal quotations omitted) (quoting Picciano v. McLoughlin, No. 07 Civ. 0781 (GTS), 2010 U.S. Dist. LEXIS 114704, at *7 (N.D.N.Y. Oct. 28, 2010).

Considering plaintiff's repeated claim of emotional injury stemming from his July 2010 arrest, plaintiff's arrest and conviction history are relevant under Rule 402 to refute and mitigate his claimed damages, and provide alternate theories of causation to the jury.  In other words, the fact that on at least 14 prior occasions, plaintiff has been arrested and detained in police custody, reduces any emotional damages plaintiff claims to have felt as result of this arrest.  Prior to this alleged false arrest, plaintiff has been convicted of a felony on at least three occasions.  (See Ex. F at Bates Nos. NYC 1332-1333, NYC 1339-1342) Allowing plaintiff to explain the emotional impact of this arrest without allowing the defense to present evidence of his prior arrests, convictions and their emotional impact on him would deprive the jury a crucial piece in determining just how severely this particular arrest may have emotionally impacted plaintiff.

**B.      Impeachment**

Courts have recognized that "the idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruthfully." Giles v. Rhodes, 94 Civ. 6385 (CSH), 2000 U.S. Dist. LEXIS 14926, at *4 (S.D.N.Y. Oct. 10, 2000) (citing Gora v. Costa, 971 F.2d 1325, 1330 (7th Cir. 1992)).  See generally United States v. Estrada, 430 F.3d 606, 617 (2d Cir. 2005).  Rule 609(b) of the Federal Rules of Evidence does not permit the use of a conviction more than ten years old to attack a witness's credibility unless "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."  Although, the Second Circuit has recognized that Congress intended that convictions over ten years old be admitted "very rarely and only in exceptional circumstances," the Court admits such convictions into evidence when a witness's credibility is "highly relevant to several disputed issues in the case...." Zinman v. Black & Decker (U.S.), 983 F.2d 431 (2d Cir. 1993); see also United States v. Payton, 159 F.3d

49, 57 (2d Cir. 1998) (admitting thirteen-year-old conviction where the witness's "credibility was 'crucial'" to criminal defense). "The centrality of the credibility issue and the impeachment value of the prior convictions are highly relevant factors to a trial court's ultimate determination as to whether the probative value of an old conviction substantially outweighs its prejudicial effect in a current trial." Payton, 159 F.3d at 57.

Defendants seek to introduce plaintiff's May 1982 convictions of Disorderly Conduct, *in full satisfaction of* Forgery in the 3rd Degree (NYPL § 170.05), and a motor vehicle violation of driving with a suspended license, which was *covered by another case*, involving a charge of Criminal Impersonation (NYPL § 190.25) (See Ex. F at Bates Nos. NYC 1335-1336 & 1338-1339)

Federal Rule of Evidence 609(a)(2) states that "for the purpose of attacking the character for truthfulness of a witness, evidence that any witness has been convicted of a crime *shall* be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of *dishonesty* or *false statement* by the witness." (emphasis added) The subsection of forgery, in which plaintiff's guilty plea for disorderly conduct was in full satisfaction of, states that "a person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument." See NYPL § 170.05. The subsection of criminal impersonation is essentially just that – when the perpetrator impersonates someone else with the intent to injure or defraud that other person. (See NYPL § 190.25)

Upon being convicted of the aforementioned crimes, plaintiff was sentenced to 15 days custody for each conviction. Although the conviction dates were more than ten years ago, the probative value of the conviction substantially outweighs its prejudicial effect pursuant to

Federal Rule of Evidence 609(b). As discussed more thoroughly in Point XII C *infra*, plaintiff failed to disclose any of these arrest charges or convictions at his deposition. The failure to even disclose this information, alone, goes to plaintiff's credibility. Because plaintiff's credibility is crucial to the case at bar, defendants should be permitted to question him on these convictions.

Moreover, plaintiff's credibility in the instant matter is especially important because the parties' version of events are completely different and thus plaintiff's success at trial likely depends entirely on her credibility with the jury. See Williams v. McCarthy, No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *4-5 (S.D.N.Y. Oct. 25, 2007) (finding that prior felony convictions were admissible to impeach plaintiff's credibility in part because "the versions of the events by the parties are radically different, witness credibility will be especially important in this case."); Jones, 2002 U.S. Dist. LEXIS 2052, 8.

Here, plaintiff's credibility is of crucial significance because the parties' versions of what happened on July 29, 2010 are so vastly different. Accordingly, the jury will essentially be asked to decide whether plaintiff's or defendants' version of events is most credible. Plaintiff's success at trial, therefore, probably hinges entirely on his credibility with the jury. To allow plaintiff to represent himself to a jury as an honest, law abiding citizen would be misleading. Accordingly, defendants should be permitted, pursuant to Rule 609(a)(2), to introduce evidence of plaintiff's prior convictions, which were in satisfaction of a Forgery in the 3rd Degree charge and a charge of Criminal Impersonation, as they directly relate to plaintiff's character for truthfulness.

**C.      Plaintiff's Misrepresentations Under Oath of His Criminal History**

Defendant should be permitted to inquire into plaintiff's misrepresentations under oath about his arrest and conviction history in order to attack his character for truthfulness under Rule 608(b). Specifically, defendant should be permitted to impeach plaintiff regarding both his

arrest and conviction history, and should be permitted to impeach plaintiff based on his responses to Defendants' First Set of Interrogatories, plaintiff's deposition testimony, and plaintiff's RAP sheet.

For example, in plaintiff's supplemental response to defendants' First Set of Interrogatories, which were specifically signed by plaintiff himself, plaintiff stated that he has only been arrested on two occasions—one arrest occurring in 2005 and another arrest in 1980. (See Pl.'s Supplemental  Response to Defendants First Set of Interrogatories ("Pl.'s Supp. Interrog. Resp.") at No. 13, annexed to July 20, 2012 letter to Court as Ex. H) Plaintiff's deposition testimony, however, conflicts with his discovery responses.  At his October 31, 2011 deposition, plaintiff testified that he had been arrested on 5 prior occasions, with his arrests occuring in 1973, 1984, 2000, 2005 and the present incident in 2010.  (See Ex. E at Tr: 47:14-15, 50:18-20, 55:14-16, 57:17-58:1; 59:6-9) Plaintiff's RAP sheet, however, conflicts with both his deposition testimony and his discovery responses, in that, according to plaintiff's RAP sheet, plaintiff has been arrested on at least 14 separate occasions—ranging from the year 1968 through 2007.  (See generally Ex. F)

With respect to plaintiff's conviction history, plaintiff responded to defendants' interrogatories that he has three prior convictions, which were in approximately 2001, 1985, and 1973.  (See Pl.'s Supp. Interrog. Resp. at No. 14)  According to plaintiff's deposition testimony, he has been convicted on at least 4 separate occasions, occurring in 1973, 1984, 2000 and 2005.  (See generally Ex. E at 47-59) Plaintiff's RAP sheet, however, conflicts with both plaintiff's deposition testimony and interrogatory responses, as it reflects that he has been convicted on at least 9 separate occasions.  (See generally Ex. F)

Moreover, plaintiff also testified at his deposition that the last time he was arrested, prior to July 29, 2010, was in 2005, when, in fact, he was arrested in June of 2007 and *plead guilty* to a misdemeanor charge related to that arrest. (See Ex. E at 59:6-8; see also Ex. F at Bates No. 1329-30)  In fact, he was sentenced to 5 days in custody and a fine of $500 for that arrest. (See Ex. F at Bates Nos. 1329-30)   Plaintiff also blatantly failed to identify nearly 5 other arrests, between the years of 1984 and 1972, and a number of other arrests prior to 1972, which appear on his RAP sheet.  (See Ex. F at Bates Nos. 1332-45)

Under this line of questioning, defendants do not intend to introduce extrinsic evidence of plaintiff's prior arrests and convictions.   Rather, defendants seeks to impeach plaintiff concerning his previous statements to demonstrate his willingness to lie under oath. Accordingly, pursuant to Fed. R. Evid. 608(b), defendants should be permitted to inquire into plaintiff's misrepresentations under oath concerning his arrest and conviction history.

Where evidence of specific acts is offered to attack the witness's character for truthfulness, its admission is governed by Rule 608(b).  See United States v. Jones, 900 F.2d 512, 520-521 (2d Cir. 1990).  Rule 608(b) states in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness…may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness…concerning the witness' character for truthfulness or untruthfulness[.]

Fed. R. Evid. 608(b).  Thus, the court may, in its discretion, allow inquiry into specific instances of the conduct of a witness on cross-examination, when those acts are "probative of truthfulness or untruthfulness."  Id.; see also Jones, 900 F.2d at 521; Munafo v. Metro. Transp. Auth., No. 98 Civ. 4572 (ERK), 2003 U.S. Dist. LEXIS 13495, at *76 (E.D.N.Y. Jan. 22, 2003) ("To be

- 34 -

admissible under Rule 608(b), specific acts of misconduct must involve some element of deception or fraud that would tend to show the witness' propensity to lie.")

The testimony and admissions at issue here are probative of truthfulness and are directly relevant to plaintiff's propensity for deception when providing his account of the incident.  In this case, credibility of the witnesses is of the upmost importance, as each side's version of events drastically differ.  As exemplified above, plaintiff provided false information regarding his extensive arrest and conviction history.  Plaintiff stated, under oath, that he has been arrested 5 times and convicted of four crimes; plaintiff's RAP sheet, however, reflects *at least* 14 separate arrests and 9 convictions, three of which are violent felony convictions.  (See generally Ex. F)  Moreover, plaintiff failed to identify at least two prior convictions, which involved crimes of truthfulness and/or veracity.  For example, with respect to plaintiff's January 31, 1978 arrest and subsequent 1982 conviction, plaintiff plead guilty to disorderly conduct, however, it was *in full satisfaction of* a 3rd Degree Forgery charge.[12] (See Ex. F at Bates No. NYC 1336) Moreover, plaintiff also failed to identify a July 16, 1977 arrest, which also resulted in a 1982 conviction of a Motor Vehicle Violation of driving with a suspended license, which was also "covered by another case", which included a charge of criminal personation[13], another crime that lends directly to plaintiff's character for truthfulness and veracity. (See Ex. F at Bates No. NYC 1339)

Plaintiff's repeated misrepresentations under oath at his deposition and in his signed discovery responses about his criminal history is of probative value on the issue of his veracity.  Moreover, plaintiff's misrepresentations under oath are especially probative of his character for truthfulness here since the jury must decide whether plaintiff or defendants' version

---

[12] See NYPL § 170.05, stating that "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument."
[13] See generally NYPL § 190.25.

- 35 -

of events is more credible.   Lewis v. Baker, 526 F.2d 470, 475-476 (2d Cir. N.Y. 1975) ("Particularly, as the jury's ultimate task was to decide whether they would believe plaintiff's or defendants' account of the events...such evidence bearing directly on a party's capacity for truth-telling was relevant").

Further, the Court should consider whether the conduct "occurred in a context where there is a premium on veracity", i.e., situations that "carry an obligation for truthfulness" such as proceedings before a court or other governmental agency.   Davidson Pipe Co. v. Laventhol & Horwath, 120 F.R.D. 455, 462 (S.D.N.Y. 1988).  Here, plaintiff had an affirmative duty to provide truthful testimony under oath at his deposition and in his responses to defendants' discovery demands.  Plaintiff's failure to do so is probative of his lack of credibility even when the obligation to tell the truth is at the highest.  Defendants, therefore, request permission to cross-examine plaintiff on these specific instances of his character for untruthfulness.

In sum, under Rules 402, 404(b), 609(a)(1), 609(b) and 608(b), defendants should be permitted to question and introduce evidence of plaintiff's arrest and conviction history to: (1) refute and mitigate plaintiff's claimed damages; (2) impeach plaintiff at trial by calling his veracity into question; and (3) show plaintiff's willingness to lie under oath about his arrest and conviction history.

## CONCLUSION

For the foregoing reasons, defendant Officers Hillmann, Higa, McCullough and Famighetti respectfully requests that the Court grant defendants' motions *in limine* in their entirety and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             July 20, 2012

                      MICHAEL A. CARDOZO
                      Corporation Counsel of the City of New York
                      *Attorney for Defendants*
                      100 Church Street
                      New York, New York 10007
                      (212) 788-1090

By:                                 
                      ALEXANDRA CORSI
                      Assistant Corporation Counsel

cc (by ECF):  Paul Hale, Esq.
              Gabriel Harvis, Esq.
              Afsaan Saleem, Esq